FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

2009 NOV -4 PM 2: 05

CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | |
|---|---|
| TIMOTHY TURNGREN, | ] |
| Plaintiff. | ] |
| vs. | ] Cause No.: **4:09CV0081** |
| THE HONORABLE DUANE DAUGHERTY Judge of the Jasper County Circuit Court, and JASPER COUNTY, INDIANA | ] |
| Defendant. | ] |

## COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS

**COMES NOW** the Plaintiff, TIMOTHY TURNGREN (hereinafter "TURNGREN") and in his Complaint for Deprivation of Civil Rights alleges and states to the honorable Court as follows:

### OVERVIEW OF CASE AND CONTROVERSY

Plaintiff brings this action against the Defendant, the Honorable Duane Daugherty, individually and in his official capacity, and Jasper County, Indiana for damages arising out of the violation of the Plaintiff's rights secured to him by the Sixth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. §1983, and Article I, §13 of the Indiana Constitution. Plaintiff's claims arise from the Defendant's intentional denial of the Plaintiff's right to counsel; and, as a result of said denial, the Plaintiff was damaged.

## JURISDICTION

1. Plaintiff brings this action against the Defendant to redress the deprivation of the well-established rights secured to the Plaintiff by the Sixth Amendment and Fourteenth Amendments to the Constitution of the United States of America, and 42 U.S.C. §1983. The Sixth Amendment of the United States Constitution states, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

> U.S. Const., Amend. VI.

The Fourteenth Amendment of the United States Constitution states, in pertinent part:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> U.S. Const., Amend. XIV.

2. Plaintiff is a citizen of the State of <u>Illinois</u> or a political subdivision thereof.. The Honorable Duane Daugherty is a citizen of the State of Indiana; and, a resident of Jasper County, Indiana. Jasper County, Indiana is a political subdivision of the State of Indiana. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1332, and 1343(a)(3), and 42 U.S.C. §1983.

4. Plaintiff also invokes the supplemental jurisdiction of the Court over the Plaintiff's claims against the Defendant for the violation of the Plaintiff's rights secured to him by Article I, §13 of the Indiana Constitution pursuant to 28 U.S.C. §1367, as the state law claim forms a part of the same case and controversy.

5. Venue is proper in the district pursuant to 28 U.S.C. §1391.

## PARTIES

6. TURNGREN is a citizen of the State of Illinois or a political subdivision thereof.

7. Defendant, Jasper County, Indiana (hereinafter "JASPER COUNTY") is a political subdivision of the State of Indiana responsible for maintaining the elected office of Circuit Court Judge.

8. Defendant, the Honorable Duane Daugherty (hereinafter "JUDGE"), sued individually and in his official capacity, was the acting Judge for the Jasper County Circuit Court.

## FACTS

9. On February 22, 2005, the State of Indiana filed its information charging TURNGREN with the offense of child m9olesting (a Class C Felony) in Count I and the offense of sexual misconduct with a minor (a Class C Felony) in Count II. Both counts were charged in the same information and the Jasper County Circuit Court cause number

for the matter was 37C01-0502-FC-83. Both counts alleged the improper fondling or touching of A.D.W. by TURNGREN in 2002 and 2003.

10. On March 14, 2006, TURNGREN appeared without counsel for the initial hearing and requested an attorney be appointed at public expense to represent him. His request was denied by DAUGHERTY, the presiding judge of the Jasper County Circuit Court. A jury trial was set in the cause for August 4, 2005; and, TURNGREN was not in held in custody prior to trial.

11. On May 11, 2005, an omnibus hearing was conducted, and a pre-trial conference was later held on August 2, 2005. At both proceedings, TURNGREN was not represented by counsel.

12. A jury trial commenced on August 4, 2005; and, on August 5, 2005, the jury found TURNGREN guilty of child molesting in Count I but not guilty of sexual misconduct with a minor in Count II. TURNGREN represented himself, *pro se*, throughout the trial. TURNGREN was taken into custody at the conclusion of the trial.

13. On September 1, 2005, a sentencing hearing was conducted and TURNGREN, again appearing *pro se*, was sentenced to four (4) years incarceration, one (1) year of which was suspended.

14. On September 30, 2005, counsel appeared for TURNGREN and filed a Notice of Appeal. TURNGREN appealed his conviction; and, the Indiana Court of Appeals reversed the conviction on the grounds that DAUGHERTY failed to appoint counsel for TURNGREN. The Indiana Court of Appeals issued its decision on the 16th day of August, 2006.

4

15. The matter was remanded to the Jasper County Circuit Court for further proceedings not inconsistent with the decision of the Indiana Court of Appeals; and, on 20th day of December, 2007, the information against TURNGREN was dismissed.

16. TURNGREN was a Jasper County, Indiana neighbor, pastor, music teacher, and karate teacher to A.M.W., who was born on May 31, 1989. She indicated that in 2002, when she was 13-14 years old, TURNGREN (who was at the time 43 years old) began making inappropriate comments and giving personal gifts to her. Additionally, there were Valentine cards and notes given to A.M.W. which she recognized as having come from TURNGREN.

17. A.M.W. related that in late 2002, TURNGREN gave her a "boyfriend-girlfriend" kiss and a sexual hug at the karate school in Wheatfield, Indiana; and, TURNGREN touched her butt while giving her a "sexual kiss" in his basement. A.M.W. related further that TURNGREN told her he wanted to have sex with her. TURNGREN denied all of these allegations; and, at all times, TURNGREN maintained and continues to maintain is innocence of these allegations.

18. A.M.W. had memory problems and she admitted to some trouble relating when these events took place and even a little confusion about whether they took place. TURNGREN's defense, while proceeding *pro se*, at trial focused on the inconsistent and contradictory statements given by A.M.W. TURNGREN denied taking advantage of the young woman, whom TURNGREN described as "like an adopted daughter."

19. At his initial hearing, TURNGREN indicated that he wanted an attorney but could not afford one; and, TURNGREN requested the appointment of counsel at public expense to represent him. DAUGHERTY proceeded to examine TURNGREN

5

under oath for indigency. TURNGREN, who was 45 years old at the time, stated that he was divorced, that he resided with his parents in Rockford, Illinois, and that he paid $120.00 each week for child support. TURNGREN indicated a new income of about $650.00 per week from his job. TURNGREN stated that he owned no real estate and that he had a $50.00 savings account with another $536.00 in a checking account kept as a reserve against his child support obligation. TURNGREN came to the hearing with a handwritten list of assets, debts, and expenses, plus a pay stub, which he presented to the Court for its review. The undisputed information in these documents indicated a negative cash flow, or at best, an income that barley met expenses and obligations. TURNGREN related "that I still owe my parents a lot of money and I have no other way of paying for a lawyer, Your Honor. And, if . . . and if I'm not granted a public defender, I will have to act *pro se*."

20. DAUGHERTY denied TURNGREN's request for appointed counsel, stating that "you may not have any cash at the present time, but you certainly have the means with which to borrow some money." The issue of indigency was never addressed thereafter, and TURNGREN represented himself through trial and sentencing. At no point during the trial court proceedings did DAUGHERTY seek or elicit a waiver of right to counsel from TURNGREN. At the omnibus hearing, TURNGREN mentioned that his *pro se* status was "extremely unusual in a criminal matter . . . " The Trial Court acknowledged TURNGREN's comment and responded:

> "You indicated that representing yourself is unusual in a criminal case. It also might be rather stupid. You're charged with two Class C Felonies."

6

## COUNT I

### VIOLATION OF CONSTITUTIONAL RIGHTS
### DEFENDANT DAUGHERTY

(Plaintiff's Claim for Compensatory Damages)

21. TURNGREN incorporates herein by reference the allegations contained in rhetorical paragraphs numbered 1 through 20 above.

22. There was in full force and effect in the United States of America the following provisions of the Constitution of the United States of America at the time of the complained of incident, to wit:

**Constitution of the United States**

**Amendment VI:**

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const., Amend. VI.

and

**Amendment XIV:**

. . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . .

and

**42 U.S.C. §1983; Civil action for deprivation of rights:**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

7

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

23. The conduct of the Defendant, DAUGHERTY, in denying TURNGREN his right to counsel secured to him by operation of the Constitution of the United States of America was done under color of law, custom, policy, practice, and/or usage.

24. The acts and omissions of DAUGHERTY, done under color of law, custom, policy, practice, and/or usage, was done with actual malice toward TURNGREN and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of TURNGREN; and, as such was violative TURNGREN's constitutional rights secured to TURNGREN by the Sixth and Fourteenth Amendments of the Constitution of the United States of America as well as 42 U.S.C. §1983.

25. As a proximate result of the acts and omission of DAUGHERTY and deprivation of TURNGREN's above-stated rights, TURNGREN suffered mental anguish as well as the loss of his liberty and is entitled to recover compensatory damages.

## COUNT II

## VIOLATION OF CONSTITUTIONAL RIGHTS
## DEFENDANT DAUGHERTY

(Plaintiff's Claim for Exemplary Damages)

26. TURNGREN incorporates herein by reference the allegations contained in rhetorical paragraphs numbered 1 through 25 above.

27. The acts and omissions of DAUGHERTY, sued individually and in his official capacity, were done under color of law, custom, policy, practice, and/or usage, were done with actual malice toward TURNGREN and with willful and wanton indifference to and with deliberate disregard for the constitutional rights of TURNGREN; and, as such were violative TURNGREN's constitutional rights secured to TURNGREN by the Sixth and Fourteenth Amendments of the Constitution of the United States of America as well as 42 U.S.C. §1983.

33. As a proximate result of the acts and omission of DAUGHERTY, and deprivation of TURNGREN's above-stated rights, TURGREN suffered mental anguish as well as the loss of his liberty and is entitled to recover exemplary damages.

## COUNT III

VIOLATION OF CONSTITUTIONAL RIGHTS – POLICY AND PRACTICE
DEFENDANTS DAUGHERTY AND JASPER COUNTY, INDIANA

34. Plaintiff incorporates herein by reference the allegations contained in rhetorical paragraphs numbered 1 through 33 above.

35. The deliberate indifference of the Defendants, DAUGHERTY and JASPER COUNTY, INDIANA, resulted from a commonly accepted custom, policy and practice of both DAUGHERTY and JASPER COUNTY, INDIANA and at all times material to this complaint Defendants, DAUGHERTY and JASPER COUNTY, INDIANA, had in effect *de facto* customs, policies, practices, and usages which were applied to the deprivation of civil rights suffered by TURNGREN in this case.

36. For purposes of the deprivation suffered by TURNGREN, it was the *de facto* custom, policy, procedure, and usage of the Defendants, DAUGHERTY and JASPER COUNTY, INDIANA, to deprive indigent individuals and/or other individuals qualifying for pauper counsel their rights secured to them by the Sixth and Fourteenth Amendments to the Constitution of the United States of America.

37. This custom, policy, procedure, and/or usage was in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America and was a deliberate choice by the Defendants, DAUGHERTY and JASPER COUNTY, INDIANA, by and through the Defendant, DAUGHERTY, the elected judge of the Jasper County Circuit Court.

38. These customs, policies, procedures, and/or usages were maintained with deliberate, reckless, and callous indifference and disregard for the constitutional rights of

TURNGREN; and, these customs, polices, procedures, and/or usages were the proximate cause of the deprivation of TURNGREN's Sixth and Fourteenth Amendment rights under the Constitution of the United States of American and injuries.

49.  The Defendants, DAUGHERTY and JASPER COUNTY, INDIANA, are liable.

## PRAYER

**WHEREFORE**, TURNGREN requests that this honorable Court enter judgment against the Defendants and award TURNGREN not less than the sum of $40,000.00 in compensatory damages and $4,000,000.00 in exemplary damages resulting from the conduct complained of hereinabove as well as to award any and all other and additional relief this Court may deem just and proper in the circumstances.

Respectfully submitted,

_____
(Name of Person Signing Complaint)

## JURY DEMAND

TURNGREN respectfully requests trial by jury.

Respectfully submitted,

*[signature]*

(Name of Person Signing Complaint)